IN the MATTER OF the ESTATE OF William R.
PIRSCH, Deceased: Herman C. GUNDLACH,
Appellant,

v.

ESTATE OF William R. PIRSCH, Respondent.

Court of Appeals

*No. 88–0552. Submitted on briefs November 18, 1988.—Decided
December 28, 1988.*

(Also reported in 435 N.W.2d 317.)

On behalf of the appellant, the cause was submitted on the briefs of *Charles J. Richards* of *Phillips, Richards & Mayew, S.C.* of Kenosha.

On behalf of the respondent, the cause was submitted on the brief of *Neil F. Guttormsen* and *Timothy J. Geraghty* of *Heide, Hartley, Thom, Wilk & Guttormsen* of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   This estate case concerns a successful objection by income beneficiaries to the final accounts of co-personal representatives Herman C. Gundlach and William A. Sale, Jr. Only one of the former co-representatives, Gundlach, appeals from the judgment. He contends that the trial court erred in entering judgment against the co-personal representa-

tives for a sum equal to the amount of estate-generated income used to pay estate obligations. He also objects to the trial court's decision denying fees for his services. We reject his arguments and affirm. Gundlach also appeals the trial court obliging Gundlach, rather than the estate, to pay the beneficiaries' attorney fees. We reverse the award and remand for further findings.

William R. Pirsch died in 1974, and his estate remained open until 1985. During the course of estate administration, income generated by the estate's principal was used to pay expenses of administration.

In 1980, the co-personal representatives loaned $45,000 to Peter Pirsch & Sons Co. Co-personal representative Sale was the president and largest individual stockholder of that corporation. The amount borrowed and the interest due were not fully repaid until 1985.

## 1. APPLICATION OF THE WISCONSIN PRINCIPAL AND INCOME ACT TO THE PIRSCH WILL

Gundlach first appeals the trial court's decision that under the will and the law, the personal representatives could not use income to pay estate expenses. We agree with the trial court.

Section 701.20(5)(a), Stats., states in relevant part:

Unless the will otherwise provides ... debts, funeral expenses, estate taxes, property taxes prorated to the date of death, family allowances unless charged against income by the court, and administration expenses shall be charged against the principal of the estate.

The trial court held that "the will does not include a provision regarding the allocation of taxes or administration expenses between income and the principal."

Therefore, it determined that sec. 701.20(5)(a), Stats., controls and mandates payment of expenses from principal.

Gundlach argues that "[t]he Pirsch will did not prohibit the use of cash to meet estate obligations." Gundlach suggests that the will's provision giving broad discretion to the trustees to do "all things necessary for the complete and efficient administration of [the] estate" permitted the trustees to abrogate the requirements of the Principal and Income Act. We disagree. The Pirsch will contains no provision specifically allowing the personal representatives to act in contravention of the Act. Our supreme court has determined that will provisions giving discretion to executors merely allow trustees to make good faith decisions within the confines of the. Act, but not to violate the Act. *Will of Clarenbach,* 23 Wis. 2d 71, 74–76, 126 N.W.2d 614, 616–17 (1964).

Gundlach next argues that sec. 701.20(5)(a), Stats., is not concerned with source of payment but only with the process of crediting or charging income or debt incurred and paid by the personal representative. We disagree.

An analogous provision in the Illinois Principal and Income Act was interpreted in *In re Enright,* 436 N.E.2d 681, 683 (Ill. App. Ct. 1982). The Illinois court concluded that under the Act, administration expenses should be charged against principal, and therefore the "income beneficiaries are entitled to the probate income unreduced by expenses of administering the decedent's estate ...." *Id.* We concur.

Gundlach then argues that sec. 857.03, Stats., which generally enumerates the powers and duties of personal representatives, permits the personal repre-

sentatives to use income, not principal, for estate obligations. Again, we disagree. Section 701.20(5)(a), Stats., specifically sets forth the proper source of estate obligations. Section 857.03 merely sets forth the personal representative's general powers. The usual rule is that a specific statutory directive overcomes a general provision. *Caldwell v. Percy,* 105 Wis. 2d 354, 375, 314 N.W.2d 135, 146 (Ct. App. 1981). We apply that rule here.

Citing *dicta* from *Enright,* Gundlach argues that where the principal is insufficient to satisfy estate obligations, the estate income may be used for that purpose. *See Enright,* 436 N.E.2d at 682. However, the trial court here found that estate and inheritance tax issues were settled in October of 1978. It also specifically found that the inventory on file reflects that as of March, 1977, the value of the estate subject to administration was $774,384.06. This amount is nearly twice the amount needed to pay estate expenses. The court also found that available strategies for converting the estate's stocks to cash were not explored. These findings are supported by the testimony of Gundlach and documents on file and are not clearly erroneous. *See* sec. 805.17(2), Stats.

Gundlach asserts that in reality there were no "strategies" that would have allowed conversion of principal into sufficient cash to meet administration expenses. The trial court, after reviewing the inventory and hearing the testimony, concluded otherwise and found that such strategies did exist but were not explored. "When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." *Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d

243, 250, 274 N.W.2d 647, 650 (1979). Hence, the *Enright dicta* is not implicated here.

## 2. DISALLOWANCE OF PERSONAL REPRESENTATIVES' FEES

Gundlach next appeals the trial court's disallowance of the fees paid by the personal representatives to themselves out of the estate. The trial court found that the fees were not justified and had not been authorized by the court.

Section 857.05(2), Stats., states:

> Subject to the approval of the court the personal representative shall be allowed for his or her services commissions computed on the inventory value of the property for which the personal representative is accountable less any mortgages or liens plus net principal gains in the estate proceedings at the rate of 2%; and such further sums in cases of unusual difficulty or extraordinary services as the court determines reasonable. If a personal representative is derelict in duty, his or her compensation for services may be reduced or denied.

The court made several findings in support of its ruling that fees were not justified. It found that no final account was filed from the date of death in 1974 until April of 1985. It found "no justification" for the delay, noting that the majority of estate and inheritance tax issues were resolved in 1978. No justification for failing to close the estate prior to 1985 appears in the record. Gundlach testified that the estate was not closed more promptly because he felt "no pressure" to close it. This is not a justification. The trial court's finding is not clearly erroneous.

The court also found that the personal representatives ignored the requirements of the Principal and Income Act. This finding is amply supported in the record. Gundlach testified that he was neither familiar with the Act nor aware of its rules. The court's finding that the Act was ignored is not clearly erroneous.

The trial court also found that the personal representatives failed to take timely action to liquidate the estate's stock holdings and enable compliance with the Principal and Income Act. This finding is supported in the record; Gundlach testified that no strategies for liquidation were actively explored.

Approval of personal representative's fees lies within the sound discretion of the trial court. *Estate of Astrach,* 25 Wis. 2d 331, 336, 130 N.W.2d 878, 881 (1964). In the instant case, the personal representative simply did not do what the will and the law required and failed to take actions without a justification for his failure. An administrator's expenses are unwarranted in the face of inexcusable negligence. *Mackin v. Hobbs,* 126 Wis. 216, 227, 105 N.W. 305, 309 (1905). We find no abuse of discretion in the trial court's ruling that expenses were disallowed.

### 3. SURCHARGE TO THE PERSONAL REPRESENTATIVES

Gundlach next appeals the trial court's ruling that the personal representatives be surcharged the amount of income used to pay expenses that ought to have been paid from principal.

Gundlach argues that the absolute power and discretion granted in the will excuses the personal representatives from acting "reasonably" in their handling of the estate. *See Estate of Koos,* 269 Wis. 478, 492, 69 N.W.2d 598, 605 (1955). However, *Koos* also

stands for the proposition that "the court will interfere if the trustee acts in a state of mind not contemplated by the settlor. Thus, the trustee will not be permitted to act dishonestly, or from some motive other than the accomplishment of the purposes of the trust, or ordinarily to act arbitrarily without an exercise of his judgment." *Id.* at 493, 69 N.W.2d at 606.

Executors owe a duty of loyalty, requiring that they not be motivated by self-interest or the interest of third parties in their handling of an estate. *Estate of Scheibe,* 30 Wis. 2d 116, 121, 140 N.W.2d 196, 199 (1966). In the instant case, the trial court determined that the personal representatives' actions and inactions were motivated by forces other than loyalty to the beneficiaries. It found that the "co-personal representatives were dealing with the estate funds as a type of ancillary entity to the corporation, to the detriment of the beneficiaries." It also found a "total disregard for the beneficiaries," and that the personal representatives acted in "their individual interests."

All of these findings are supported in the record. It reveals that the personal representatives acted for the convenience of the corporation and failed to act because they felt "no pressure" from those to whom they owed a duty of loyalty.

The trial court therefore found that the co-personal representatives failed in their duty of loyalty to the beneficiaries. The result was that the income beneficiaries were harmed; the income to which they were entitled under the will was directed instead towards expenses of the estate that should properly have been deducted from principal. Wisconsin law allows that under such circumstances, the trial court may surcharge the personal representatives for the income amount lost. *See id.* at 122, 140 N.W.2d at 200; *In re*

*Kugler,* 111 Wis. 2d 347, 353, 330 N.W.2d 622, 626 (Ct. App. 1983), *aff'd,* 117 Wis. 2d 314, 344 N.W.2d 160 (1984). We hold that the court did not abuse its discretion in doing so here. *See Kugler,* 111 Wis. 2d at 353, 330 N.W.2d at 626.

### 4. JUDGMENT AGAINST THE PERSONAL REPRESENTATIVES FOR ATTORNEY FEES

Gundlach last appeals the trial court's judgment against the co-personal representatives for $7000. On this issue, we remand for further findings.

Neither party disputes that the instant action for accounting is an equitable action nor that courts of equity may fashion a remedy that includes awarding attorney's fees. *See Winslow v. Winslow,* 257 Wis. 393, 396, 43 N.W.2d 496, 497 (1950); *White v. Ruditys,* 117 Wis. 2d 130, 142, 343 N.W.2d 421, 427 (Ct. App. 1983). However, something more is needed than the above-noted principles before attorney's fees can be ordered paid by the personal representative. As this court held:

> [I]t would appear that there must be something extra, something shocking, something of bad faith, fraud or deliberate dishonesty before the exception permitting personal charging of a trustee or guardian with expenses caused by mismanagement replaces the general rule that such expenses are chargeable to the estate.

*In re P.A.H.,* 115 Wis. 2d 670, 675, 340 N.W.2d 577, 580 (Ct. App. 1983).

In the similar circumstance of frivolous action allegations, where bad faith is also a prerequisite for an award of fees, our supreme court has held that attitudes such as bad faith only appear in the record when the trial court finds them present. *Sommer v. Carr,* 99 Wis. 2d 789, 793, 299 N.W.2d 856, 857 (1981). Only when the trial court finds the attitude present or denies its

presence by findings can this court review them. *Id.* at 793, 299 N.W.2d at 857–58.

In the instant case, the trial court made no finding as to the presence or absence of something fraudulent, shocking or in bad faith. Although in its memorandum decision awarding fees, it found that the personal representatives breached their fiduciary obligations, it did not note whether the breach it found constituted fraud or bad faith.

In its first memorandum decision, concerning correcting the accounts, the court also left open the question of whether the personal representatives' actions constituted something beyond inadequate performance. It stated "[b]e it because of ignorance or intentional, planned strategy, either is sufficient to make them liable to the income beneficiaries. There was a failure in their duty to the estate and the beneficiaries."

When faced with a missing factual finding, this court may affirm the judgment if clearly supported by the evidence; reverse if not so supported; or remand for findings and conclusions. *See State v. Williams,* 104 Wis. 2d 15, 22, 310 N.W.2d 601, 605 (1981). We hold that the third option is appropriate here. Bad faith is an attitude, and the trial court, having heard the testimony and seen the witnesses, is in a better position than is this court to determine what motivated the actions of the personal representatives. *See Sommer,* 99 Wis. 2d at 793, 299 N.W.2d at 857.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.